All right. Mr. Blomer, you're up. May it please the court, back in 2013, Milton Wells was bitten by a Culex mosquito, and roughly a month later, died from West Nile encephalitis. There's little doubt in this case that he was bitten by a Culex mosquito, but the trial court below... I didn't get what you said just last. Is there any dispute about that he was bitten by a mosquito? Well, there should be no dispute about that, although the trial court below raised that among several other things. For example, the trial court below said that in this accidental death insurance policy issue, that there was no showing that he was even bitten, where he was bitten, how he was bitten, things of that sort. So... Well, I mean, they knew he had West Nile. Correct. And they knew that West Nile results from a mosquito. That's correct. There was no other way except mosquito that in this particular, on these facts, that he would have contacted that. That's correct, Your Honor. And they admit that he had West Nile. So, I mean, it just seems to me it follows from that that they would have known, or there's evidence that they would have known, the jury could have decided, whether there was a wound because a mosquito bit him. They have to acknowledge that if they're not disputing the fact that he had West Nile. Well, both, you're correct on both points, Your Honor, but in addition to them having to acknowledge that based upon just common knowledge, there was testimony that the mosquito bite creates a wound or bruise, and they acknowledge that. Their claims are just to acknowledge that. So, from our perspective, that was not an issue, notwithstanding what the trial court, how she approached this case.  What is the material issue of fact to be decided, whether it's an accident, is that it? I think accident is one of them, and let me quickly address that. The policy defines, the policy says that it must be an accidental injury that causes your death, but an accident is something that's sudden, unperceivable, and of that sort, okay? And there is evidence in the policy that does not define an accident, right? Well, it doesn't define it more than that, more than those qualifiers. It adds those qualifiers to it, sudden, unperceivable event, okay? But otherwise, it's common knowledge that makes that decision, and if it's common knowledge that makes that decision as to whether or not this particular event under the circumstances was an accident, then that, to me, is a fact question, one that goes to the jury, and is not decided in a summary judgment context. You defer in the summary judgment context to, it seems to me, that's a disputed issue, okay? Well, I mean, what happened, in my view, I mean, is that there was an accident in the case that was not intended. Correct, Your Honor, and that was directly acknowledged by the Texas Supreme Court in the Nambia opinion that we cite, that the chances of that happening is minuscule. The other issue that, it seems to me, that the trial, that the other side, and the insurance company, and the trial court challenged was the issue of causation. The death certificate showed, identified the death as natural. The death certificate... Can we cut the exclusion first? Yes. Because that doesn't have anything to do with contribution as anything else. Because it seems to me, if this was an illness or disease, it's excluded. Well, that may or may not be correct, Your Honor. From our perspective, there's an ambiguity in the policy language that creates a problem there. For example, there's an exemption four that they relied on, but there's also an exemption number seven. Exemption number seven says that there's no coverage if your death is caused by and contributed to by an infection. Sorry, go ahead. By an infection. And, but it also says, it has a clawback provision there that says except where the infection is caused by the bodily injury. And that's precisely what happened here. So that if you take the position that the accident or injury caused a disease, in that context, that is a covered item. And it's not, does not fall under, conflicts with exemption number seven. I mean, death is caused by an accident, which resulted in an illness, is what I guess. Well. An accident. Right. The illness was brought on by the accident. And consequently, it was the accident that caused the death. And the, I think part of the other, part of that equation is whether it's the sole cause or was resulting from the, contributed to by these other things. There's ambiguity in that circumstance because the, the, the, accident only event doesn't necessarily cause your immediate death. You can linger and have other things that occur during that period of time. And in this particular instance, it was the encephalitis that was the predominant cause of his death. All the other things that occurred below that were resulted from the encephalitis. But for the encephalitis, that would not have, he would not have died. But where, where do you get the authority under the policy to argue but-for causation? Well, two, two, two places. One's just an interpretation of the language of policy in, in trying to provide for the meeting of, achieving the goals of the insured. You, you would never have a circumstance where there's coverage. It'd be illusory coverage. If, because of things that happened in addition to and because of the injury, the accidental injury, you could, you could terminate coverage. You wouldn't, coverage wouldn't apply. It would require that you be killed instantly in most instances before you'd be covered under the circumstances. Like if you got injured in a car wreck. If you got injured in a car wreck and- Then you had contracted septis in the hospital. Correct. And died. Correct. You would not be covered from the insurer, insurer's point of view. That's correct. That's correct. And, and you, you can't have that kind of result. At least, let me, let me, let me rephrase it. In this context, it's a question of whether the court was overly zealous in, in making factual determinations or not giving inferences where they were required. And, and we, we believe the court did. There was also the ambiguity aspect. But finally, the court never addressed the, the issue of- But do you have any authority, like in the cases, that would justify a but-for analysis? Yes. Two, number one is Stroberg opinion that we, we cite in our brief, I believe, addresses that issue. It's precisely that auto accident, the fellow died sometimes later from sepsis or some other sort of illness, and the court said that that, that the jury's finding that there was an accident was supported under those circumstances, notwithstanding- So, I mean, at least what you're saying, I suppose, is that it's a jury question at the very least. Correct. And the other one is the approach that this court has taken in a case called Reliance Standard versus, George versus Reliance Standard. There, even though it was a disability case, the court said when confronted with a disability issue and a mental health limitation on the disability coverage, the court says the appropriate way to, to address that under similar language, contributed to by language, is the but-for test. If the physical disabling issue is enough to disable the, the insured, then the other issues don't bar coverage. And this court decided that in 2015. I don't know if we cited it, but I'll get a supplement of that to the court. A lot of ways that you can catch things are accidental. In other words, they could be airborne from the person who gets it standpoint. I didn't intend to be sneezed on. I didn't intend to touch something right behind someone who had just touched something with their germs on it. I didn't mean to touch my face or my eyes, but I did. It was an accident from my standpoint. So how do you, would that come into, would that be covered? Let's say you got some infectious disease or an illness or disease from airborne or contact that was accidental. This court just decided an issue similar to that with an airborne disease that resulted in the loss of an eye. And. I wrote that opinion. And, and, and, and it's our view that there, there's some distinguishing factors between that one and this one. First, accident is qualified by the other language in the policy. Wound, bruise. It's also qualified by sudden, unexpected, unintended event. That's number one. Number two, the timeframe for the incubation of that disease in that other case involving the eye was more than a year or so. This one's a different one. This one's a more, a more immediate deal. But. He got it immediately, but he took him a year before he lost his eye. Correct. Correct. So I think those are some of the distinguishing factors. And then finally, whether or not it's an accident is ultimately going to be a jury question. It is not a question that is decided, especially when the basis for it have been controverted in the record. Well, it seems to me jury questions, you can't have one jury say a puncture with a needle is an accident and another jury say a puncture with a needle is not. I mean, it seems to me that those kinds of things have to be categorical. Those are, you can't, if that's the only question is when you get punctured with a needle or an accident or not, courts have to decide that. One jury, you can't let one jury say yes and one jury say no. So some things have to be decided as a matter of law categorically. I agree. Those, puncture with a needle. Just like puncture with a mosquito bite. Just like puncture with a mosquito bite fits the category of an accident. You don't go out and tend to get bitten by a Culex mosquito and get a disease. Okay? And you do everything you can to protect yourself against that. And mosquitoes bite all the time, but not Culex mosquitoes. If they did, everybody in Houston would be walking around with a mosquito net on their head because it would be something that not only is foreseeable, but like, we don't have that circumstance. This is a rare type of event. Same thing with a needle puncture where you get an Ebola virus or something of that sort. So I agree that over time it seems to me they will evolve a set of standards in that regard. I don't agree that, I mean, I do agree that the court's decision in the airborne infection case, I agree with that. That's just my gut. But in this case. But you can write a policy. I mean, an insurance company can write a policy. I suppose it would exclude those kind of things. Your Honor, they do it. Maybe they thought they did in this case. They do it all the time, and they make it more, you know, alcohol and intoxication, for example. They can write policies that exclude coverage where alcohol is involved. They can do that easily. They can do that same thing with airborne illnesses. And they are studying all the time the kinds of claims that are made in order to refine their underwriting process to refine the language and the policy. So to the extent it becomes an issue. But here they don't define accidental. Well, they do. The policy does. But they also define the exclusions, and the list can get long. Okay. All right. Thank you, Mr. Clark. Thank you, Your Honor. We have a little time. Ms. Sotek. May it please the Court. To start with, and we can deal with either the insurance cost first or the exclusion first, whichever way Your Honor would rather proceed. But this Court has held on numerous occasions, not only that accidental death insurance is not life insurance but limited insurance and should be interpreted in that way, and that only applies to narrowly prescribed circumstances. Moreover, this Court has also held on two occasions that the insuring provision at issue in this policy. Why this is not an accident as defined in publicly available dictionaries? This is not an accident because under the insuring provision, in order for there to be coverage as an accidental death, the death must occur. The death must be caused by accidental injury, accidental bodily injury that must be the sole independent cause of death independent of any other cause. Deal with it. Accidental. In other words, Webster's defines accidental as happening without intent through carelessness, could be carelessness arising from extrinsic causes. Not having it in Blacks defines it as not having occurred as a result of anyone's purposeful act, resulting from an event that could not have been prevented. I mean, it seems to me that the accident, at least whether there was an accident here, is a jury question. Your Honor? Even if you assume in this case that the bite by the mosquito was an accident, even if you assume that without the jury question, there's still the requirements for coverage of that accident are not met under the insuring clause because if the accident in this instance produced the West Nile infection, which then led to the West Nile encephalitis, the district court below found that the death certificate showed that there were other causes besides the West Nile encephalitis or the accidental injury of the carrier mosquito bite that resulted in the death, and those included the three causes. Yeah, but I mean, if the accident itself is the cause of all the ancillary problems, I mean, it seems to me that still it's an accidental death. The death would not have happened except for the accident. Your Honor, the evidence in the record on whether or not the West Nile virus or the accident caused all the other conditions limited within the death certificate that were listed as concurrent causes that the district court found properly that excluded coverage under the insuring provision, the evidence in the record on that issue was not clear. Of course, Ms. Wells introduced evidence from her expert that said all of those other conditions were secondary. However, Minnesota Life had introduced evidence that said no, they were not secondary. Those were other conditions that contributed and were concurrent causes of the death. Why isn't that a jury question? Because it's not a jury question. Well, you've got two experts with two different opinions. So, I mean, why can't the jury choose which expert it's going to believe? Well, as this court said in the Hess case when the issue was there was a drowning under the same insuring clause, a gentleman drowned, and there was evidence that he had a heart condition, and the evidence was equally applicable as to whether or not equally could go either way as to whether or not the heart condition contributed to the drowning. The drowning would be accidental, but the heart condition would not be. And this court held that the party with the burden of proof on that issue, on the sole cause, then must lose. And that's really the question here on the insuring clause that goes to, Your Honor asked Ms. Wells' counsel whether or not where she gets the but-for causation. At least with regard to the insuring clause in particular, that provision requires more than but-for causation. In fact, the binding authorities of this court and the Texas Supreme Court, who have all found that the language in the insuring clause requiring that the accidental injury be the sole independent cause, requires that you exclude any other concurrent proximate cause. So if there's evidence in the record that these other causes were also proximate concurrent causes of Mr. Wells' death, then she cannot satisfy a burden to create a fact issue on that question. What if someone is in an automobile accident and the trauma has a deleterious effect on his kidneys and he dies as a result of kidney failure? Is that death covered under your policy? I think that it is, Your Honor. Why would that be? In that instance, you have evidence that the accidental injury was the precipitating cause of a series of events that all related to that original accidental injury. That's what you've got here, though. I mean, a jury could be convinced of that. Well, even if a jury could be— The precipitating cause. I mean, in fact, that's the argument that's being made here. Really, I mean, it's but-for or precip— Well, that's the argument that's being made. However, there's conflicting evidence on that in the record, including evidence on the death certificate itself that lists concurrent causes that aren't related to West Nile encephalitis that are listed separately. What are these? I had it somewhere here. Doesn't conflicting evidence undercut your argument? I'm sorry? Doesn't the conflicting evidence that you're referring to undermine your argument? No, Your Honor, because there is not—the conflicting evidence here, all of the evidence in the record is essentially supporting that these other concurrent causes contributed to Mr. Wells' death. The only evidence that Ms. Wells has put forward is a conclusory statement of her expert who says, no, these were all secondary. Now, my notes say that Melton's certified death certificate lists the Nile disease as his immediate cause of death. It then lists acute respiratory failure, septic shock, and multisystem failure as the underlying causes of death. It does not list weight as a factor and calls it a natural death instead of an accident. I mean, that would be—but I thought the death certificate itself lists West Nile as the immediate cause of his death. It does, Your Honor, but it lists these other— But that's the result of the— Then I think you would get to a spot where— McCulloch, use your term, precipitating. Right. If you assume that, you still don't have an evidence, and I guess if we're also assuming an accident and that a bite by a mosquito bite could be an accident, if we're assuming both of those things, you still don't get past, in this case, the fact that the death would still be excluded by the exclusion. Those are two different issues. Well, I mean, if you're telling me to assume that a mosquito bite that is not unexpected or insect-borne disease is not unexpected and is an accident and could be construed as an accidental bodily injury, even though we're all exposed to lots of potential accidents that lead to diseases on an everyday basis, and that's just a fact of everyday life, as opposed to something that meets the definition that Judge Jolly read off like a car accident or something that is a mishap in the sense of not something that you encounter in the course of everyday life. And if we're going to assume that a mosquito bite meets that prong of an accidental bodily injury that was unexpected, unforeseen, and evidenced by a contusion or wound, well, then assuming that and assuming that you're going to also assume that the death certificate, the other conditions listed in the death certificate were precipitated directly and independently by the West Nile encephalitis, well, then I think with those assumptions you would get to it is, in fact, a covered accidental death. I mean, I agree with you. My first impression looking at this case, I mean, was, you know, this obviously is not an accidental death, I mean, West Nile. But then I began to examine the policy and trying to reason out whether it was covered under the policy. I mean, I realized it was a much closer question than my first impression of the case. It is, if you, it seems like it. You have to assume, again, you have to assume that mosquito bite by an insect, transmission of an infectious disease by a mosquito bite or an insect bite, which incidentally is a well-known risk, including in cases that Ms. Wells cites, where they find everybody knows that this is a risk of everyday life that we all face. You have to assume, one, that that's an accident. And then second, you have to assume, particularly in this case, that Mr. Wells acquiring of an infectious disease in the most common way that that disease is transmitted, i.e. by a bite from a carrier mosquito, is somehow accidental within the sense provided by the policy. You make a strong argument. You're doing a good argument for your case. And that Simpson case that we cited in the brief that makes this distinction that was about the airborne pneumonia, I mean, again says, look, there's a difference between a car accident or, in that case, it was a prick by a needle that then leads to something that is a mishap and unexpected and unforeseen and that you would not have and unintended. There's a difference between that leading then to an infectious disease and acquiring an infectious disease in the same way that that disease is normally transmitted. Maybe there's a difference between communicable diseases and diseases that are physical infirmities or physical injuries that are caused by an extrinsic event. I mean, this was caused by an extrinsic event and not by being exposed in an airport to communicable diseases. I understand what what you're saying, but however, it's an extrinsic event. But at the same time, it is an expected and foreseeable event. In fact, if you look at the case, you could show. I mean, if you showed that this result, that West Nile was contracted by him by virtue of going into the Canadian wilds at a time when mosquitoes were most prevalent, knowing that that was one of the dangers that he faced, that may be a different kind of, but it was common there. And I mean, just the way the it's presented here. I mean, he didn't go into any particular in a particular place where one would expect West Nile. I mean, that's Jolly. I mean, with all due respect, I think the Texas Supreme Court has disagreed with that. And the very case in the NAMI court case that Mr. Wells, you know, that Miss Wells relies on. The Supreme Court found in Texas the risk of contracting West Nile virus from mosquito bites was well known in Texas. You the mosquito bites are not uncommon in Texas. In fact, Miss Mr. Well, West Nile is is uncommon. I mean, it seems to me, I mean, it does happen and it happens regularly. But of all the people that are bitten by mosquitoes and then a very, very small number can occur. Well, that's that's accurate, Your Honor. And in fact, you know, even a smaller number than those actually develop West Nile encephalitis down to one percent of the people who actually contract West Nile actually then contract West Nile encephalitis as a result of infection by the virus. Which brings me back to the exclusion argument and the reason why, even if there's any question about whether or not this death would be covered under the insuring provision of this policy. It certainly would be precluded by the exclusion in any event, because for several reasons, not least of which the evidence in the record was that Mr. Wells bodily and this was not disputed by Miss Wells below the evidence in the record was that Mr. diabetes, hypertension and age contributed to his development of West Nile encephalitis from the West Nile infection in the first instance. That's what your expert said. But that's why let's let's go to the exclusion. Sure. So that's your time. Sure. The exclusion as held by this court in SACL is unambiguous and clearly provides for even for accidental deaths that are otherwise accidental will preclude coverage. If any bodily infirmities contributed to in any way the death. I mean, they can't be incredibly remote, but they don't have to be approximate cause. They don't they have to be something less than back to contributing to. No, I mean, that's what SACL said. Just when the exclusion contains this directly and indirectly language with the if the bodily infirmity contributes directly, indirectly. Let's talk about whether encephalitis is a illness or disease. We did not. Minnesota Life did not rely on whether or not encephalitis itself is an illness or disease. I think it was down in a footnote, but that was not our main thrust on the exclusion below, in part because that raises some issues with, you know, whether or not the coverage is illusory when particularly if you assume the line here where the bite leads to the encephalitis and then to say that that's a disease that's excluded. The primary thrust of Minnesota Life's exclusion argument below and here still is that Mr. Wells bodily infirmities, including his preexisting diabetes, hypertension and age contributed to his death by making it more likely that he developed severe encephalitis from the West Nile virus in the first place. And those same conditions, including his obesity, also complicated his treatment for West Nile encephalitis such that they were contributors to his death and thus excluded by the policy, even if you assume. Let's say I'm 83 years old. I have a heart condition. I'm involved in a car accident and the experts say, you know, if you hadn't been 83 and you didn't have a heart condition, you probably would have survived the accident. But you didn't. Now, is that excluded under your policy? It depends on excluded. It depends on whether the heart condition, how much of a contributing factor that heart condition was to the death. I think if the ultimately if the testimony is that you would have died, you know, you would have lived with a heart condition for many more years. But you're you're you're insured is a eggshell pointed. You know, you take insurance. You find them. And most people will survive the accident because you're 86 or 87. Your bones are fragile. Your heart's fragile. It kills you. Is that covered or not? In my in my mind, I don't think that that would be excluded under the terms of this exclusion. So why don't you take? I didn't realize your argument is limited solely to contributing factors when you took your insurance with diabetes. There was no health requirement for this policy. An accidental death policy is not a life insurance. Diabetes didn't kill him, right? They they didn't. Right. They didn't. They didn't insure his life. They insured his mortgage in the event that he died from an accidental death. That is defined clearly within the policy's terms. What it covers. Not really. Accidental. I mean, well, I guess it does. But it doesn't define accident. Accidental. I mean, we're left to the, you know, what the dictionary is saying. And as far as the accident is concerned, it clearly conforms to the dictionary definitions of accident. It does not define the accidental, but it sets out clearly and in clear terms that have been found unambiguous by this court and the Texas Supreme Court that it clearly defines what benefits it provides and what deaths that it will pay for. What's your best Texas Supreme Court case? I'm sorry. The Texas Supreme Court. The best Texas Supreme Court case is on the exclusion is Stroberg. And on the. On the. The. On the insuring clause. Mutual benefit. And I can't recall. I can't recall the. You can give that citation to the clerk for you. I will. I can get it right. This isn't in your brief. No, I see that. My particular case. Mutual benefit. Is it in your brief? Yes, it is. I remember it. It's already in your brief. Yes, it's in the brief. May I briefly conclude? Yeah, go ahead. So for all the reasons stated in the brief in here, the court should affirm this district court summary judgment and final judgment in Minnesota life's favor. Thank you, Ms. Sotek. Mr. Palme, you have the panel. Thank you. Esteemed counsel mentioned that Minnesota life didn't ensure Mr. Wells's life. That's a little bit disingenuous because the application you'll see if you look at the application says you must be. Must apply before age 65 or 64, 65. I think it was and has absolutely no health questionnaire attached to it. If you intended to exclude people because of high blood pressure or diabetes or something of that sort, you should. You know, that could have been something you put in a health questionnaire to weed those out. So it's somewhat misleading in that regard. But the other issue is, you know, four years later or five years later when he's 68, has this event happened? Now, they say that his diabetes and hypertension and blood pressure and things of that sort were caused and was part of the exclusion. And the trial court below went along with that. But this is a, we're at a Rule 56 stage. We're at a semi-judgment stage. And it's a jury question because it was all controverted. The, whether or not the diabetes and all that contributed to his death was controverted. Whether or not the fact that the sequela from the West End encephalitis was used by them to exclude coverage, that was questioned. Dr. Ratlatt said that but for the encephalitis, these things would not have bothered him. He wouldn't have had these conditions. The issue is whether or not the record, on this record, there's enough to take these issues to a jury. Regardless of how persuasive I am, a jury may not agree that there was an accident after putting all the evidence on that we put on in the response to the semi-judgment. And that's life. We're prepared to accept that. But that's a jury question. That is not a question to be ruled upon at the Rule 56 stage. Similarly, sole cause issue. The ambiguity between the sole cause question and Exclusion 7 and reconciling that with Exclusion 4 clearly indicates that the event that caused the death doesn't necessarily, excuse me, the event that caused the injury may not be the event that caused the death and it still can be sole cause. You don't die from a mosquito bite. You do die from the consequences of that. On that record, on the record we presented, there was sufficient controverting evidence for this matter to go to the jury. One final thing. We haven't talked about our extra-contractual claims. Interestingly, the trial court's first position on this. Nobody's talked about it? You're on rebuttal now. And if you're not rebutting what she has said, I don't think it's appropriate for you to start that issue now because she can't answer. We'll rely on our briefing in that regard. It is limited insurance. It is limited insurance. But it's nevertheless insurance and the rules of construction apply to the way you construe and interpret insurance clauses. And the ambiguities in this certainly give us a basis for the court to have denied their motion for summary judgment so that this matter can be decided by a jury. Thank you very much for your time. Thank you, Mr. Sotak, for your briefing and your argument in the case.